LA GRANGE *vs*. MERRILL and others.

Where a judgment has been recovered against the principal debtor and his sureties, and a third person afterwards agrees with the creditor to become security for the payment of the debt, upon an agreement with such creditor that the new surety shall have the benefit of the judgment, for his protection and indemnity, he has a prior equity over the first sureties, and is entitled to enforce the collection of the judgment for his own benefit and protection.

THIS was an appeal, by the complainant, from a decree of the vice chancellor of the sixth circuit, dismissing the bill The facts of the case are sufficiently stated in the chancellor's opinion.

*John A. Collier*, for the appellant.

*D. S. Dickinson*, for the respondent.

THE CHANCELLOR. In 1836, L. Seymour was the drawer of a note for about $10,000, payable to the order of the complainant, J. La Grange, jr., which was subsequently endorsed by the latter and also by S. Stocking and S. Smith, and was discounted by the Chenango County Bank, for the benefit of Seymour. The bank also held, as collateral security for the payment of the same debt, the assignment of a mortgage of B. Stoddard, and a bond and mortgage of Seymour upon the Avery farm. The note not being paid at maturity, a suit was brought by the bank against the drawer and endorsers thereof; and in February, 1837, a joint judgment was recovered against all of them, for about $10,500. An execution was immediately issued against them, and was levied upon certain personal property of La Grange and Stocking. And the complainant insisted that it was also levied upon sufficient personal property of Seymour to pay the debt, except so much as was subsequently paid out of the proceeds of the premises included in the two mortgages. The vice chancellor, however, came to the conclusion that the execution was not levied upon the property of Seymour; and that the personal property which the latter held, and which was liable

---

La Grange v. Merrill.

---

to the execution in Broome county, was not more than sufficient to satisfy the previous executions against him. I concur in the conclusion at which the vice chancellor arrived on this point. And the fact that the property of Seymour was not sold on the previous executions, but was permitted by the sheriff to be sold by Seymour himself, under the agreement that the proceeds thereof should be applied in satisfaction of those executions, did not alter the rights of the complainant. For as to him and the Bank of Chenango the result was the same as if the sheriff had himself sold the property and applied the proceeds upon those previous executions. ˙For the payment of which executions the sheriff rendered himself liable, in case the proceeds of the property were not paid to him by Seymour.

Some time in the spring of 1838 an arrangement was made with the attorney of the bank, by which the Stoddard farm was to be sold for $3000, which was all it could then be sold for in cash. And a contingent contract for securing the benefit of a further price if it could be obtained within a reasonable time was also made. The $3000 was to be paid to the bank in part payment of the judgment, and the contingent contract was also to be held by the bank as security for the residue. It was further agreed that the defendant Ely should endorse the note of Seymour for the remainder of the principal and interest of the judg-. ment, as further security for that part of the debt; and that for Ely's protection and indemnity, in case he should be compelled to pay that note, he might have the benefit of all the securities held by the bank. Such I conclude to be the result of the testimony in the case; and that the judgment of the bank against Seymour and his three prior endorsers was not to be discharged. In other words, Ely merely became additional security for Seymour and his endorsers, to secure the payment of the debt for which they were all liable to the bank. And there was nothing in the arrangement that would have prevented either of the previous endorsers from paying the debt to the bank, and thus discharging Ely's liability for them; and thus to authorize them to ask for an assignment of all the securities which the bank held, for their protection and indemnity. It does not appear to

have been any part of the agreement upon which the original endorsement was made, that the Stoddard mortgage should be held specially for the use of La Grange as endorser. The bank therefore had the right to adopt such a course as would give him the benefit of that security, at its fair cash value, in reduction of his liability. I think the evidence shows that was done. In the first place the farm was transferred to a trustee, and a release of the equity of redemption was obtained. And then it was fairly sold for what was considered to be its cash value at the time; giving also to Seymour and his endorsers the benefit of the contingent contract for a further sum, if a further sum could be obtained within the time limited.

Ely afterwards had to make an arrangement, through his friends, to pay to the bank the note which he had endorsed, or rather the judgment recovered thereon. And the bank assigned the judgment against Seymour and his three previous endorsers, for Ely's protection and indemnity; as I think in justice and in equity it was bound to do. And, as I understand the case, the proceeds of all the securities held by the bank for the payment of the original judgment have been applied to such payment; leaving a considerable balance still due, which the respondents were proceeding to collect against the property of La Grange and the other endorsers of the first note, for the benefit of Ely, upon execution on that judgment. The equity and justice of the case, therefore, appear to be clearly with the respondents. And Ely, who became the security for the judgment debt of Seymour and his sureties, upon the faith that he was to have the benefit of the judgment for his protection and indemnity, has the better and stronger equity. Whether he could have maintained a suit against them, for money paid for their use, if the judgment had been in fact discharged, is another and a very different question. I think the decree of the vice chancellor was right upon the merits.

Again; I am inclined to think the objection for want of proper parties was well taken in the answer, and that the bill should have been dismissed on that ground, even if the merits had been the other way. In that case, however, the decree

should have been without prejudice to the complainant's rights upon a bill properly framed.

Here the bill seeks to set aside an execution and to cancel the judgment, and to obtain a perpetual stay of proceedings upon this joint judgment against La Grange and the two subsequent endorsers. The subsequent endorsers are not parties to this suit. If the defendants, therefore, succeeded in the present suit, Stocking and Smith could litigate the same questions over again in a new proceeding instituted by them or either of them. When the objection was made, in the answer, that the subsequent endorsers were necessary parties, the complainant should therefore have amended his bill and brought them before the court. Having neglected to do so, the vice chancellor, at the hearing, was justifiable in dismissing the bill upon that ground. (*Bailey* v. *Inglee*, 2 *Paige's Rep*, 278. *Van Epps* v. *Van Deusen*, 4 *Idem*, 64.)

But, as I have arrived at the conclusion, that the vice chancellor was right upon the merits of the case, it is not necessary or proper to modify the decree by directing the dismissal to be without prejudice. The decree appealed from must therefore be affirmed with costs.